**Ex parte M.E. (Luna) Rivas AGUILERA, Relator.**

**No. 08–89–00037–CV.**

Court of Appeals of Texas, El Paso.

March 21, 1989.

Robert B. Wales, El Paso, for relator.

Edward C. Hughes, Ann Crawford McClure, El Paso, for respondent.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

Five years after the parties were divorced, the interim of which was filled with constant battles, the trial court finally found the ex-spouse in contempt and jailed her, only to have us reluctantly grant this writ of habeas corpus.

Relator and Respondent, Henry Luna, were divorced as shown by a decree of divorce dated March 9, 1984. Five years of fighting resulted in the filing of several motions for contempt over the years. The motion for contempt, that resulted in the finding of Relator in contempt, was filed by the ex-husband in January, 1989, and consisted of sworn allegations which give some history of the problems, as well as the facts giving rise to the contempt:

(1) March 25, 1985, the trial court entered an order prohibiting the parties from making disparaging remarks about the other parent to their child.

(2) October 31, 1985, in another order, the trial court permanently enjoined the parties from making disparaging remarks about the other parent to their child.

(3) As a result of a contempt motion, the trial court conducted a hearing on September 6, 1988, and as a result took the matter of contempt under advisement. The court's order, however, is the order that resulted in the finding of contempt and the jailing of the Relator. That order stated:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED all previous Restraining Orders prohibiting each party from making derogatory remarks about the respective party are to remain in effect."

The parties were also ordered as parents to instill in the child by work and kindness the good and kind qualities of the other parent.

The above order had an apparent success rate of less than thirty days because the ex-husband filed a motion for contempt in January, 1989, asserting that the September 7, 1988 order had been violated when on or about October 1, 1988, Relator (the mother of the child) allowed the child's maternal grandmother, in her presence, to tell the child that her step-mother had AIDS and she (the child) should not kiss her stepmother or eat food prepared by the stepmother, otherwise she could catch AIDS. The movant stated the statements were taken as real by the child in that thereafter, the child refused to eat in-house prepared meals. Other allegations were made of a troublesome conduct, and actions by Relator, such as allowing the child, to view "R" and "X" rated videos, showering and sleeping with the child, but such allegations were not a part of the trial judge's contempt findings.

On February 9, 1989, the trial court heard the motion for contempt and found the Relator guilty of separate violations of the September 11, 1988 order (the date of the order was actually September 7, 1988) when:

(1) M.E. (Luna) Rivas Aguilera (Relator) during the month of October, 1988, told or was present when the child was told that the present wife of her ex-husband had AIDS and that she

should not hug or kiss her, nor should the child eat at the residence of her ex-husband.

(2) M.E. (Luna) Rivas Aguilera (Relator), during the month of November, 1988, told or was present when the child was told that the present wife of her ex-husband had AIDS and that she should not hug or kiss her, nor should the child eat at the residence of her husband.

The trial court held the Relator in contempt, finding that the above conduct violated the Court's order dated September 11, 1988, that stated:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all previous Restraining Orders prohibiting each party from making derrogatory [sic] remarks about the respective party are to remain in effect."

Punishment was assessed at confinement in the county jail for a period of three months and a fine of $500.00. The jail time was to be served on weekends, and the ex-husband was to have possession of the child during the Relator's detention. Court costs and attorney's fees of $2,500.00 were assessed against Relator. The filing of this writ resulted.

The first attack is made on the fact that there was no order dated September 11, 1988 that could be violated. That statement is true since the trial court's order is dated September 7, 1988. Does this error render the judgment of contempt void? *Ex parte Filemyr*, 509 S.W.2d 731 (Tex.Civ. App.—Austin 1974). We find no merit to this contention where, as here, the variance is only four days, and the order of contempt sets forth specifically the provision violated. *Ex parte Benitez*, 590 S.W.2d 704 (Tex.1979); *Ex parte Crawford*, 684 S.W.2d 124 (Tex.App.—Houston [14th Dist.] 1984); *Ex parte Hall*, 611 S.W.2d 459 (Tex.Civ.App.—Dallas 1980).

In order to put to rest this case, we are compelled to refer to the contempt judgment, wherein it states that Relator TOLD OR WAS PRESENT when the child was told that the ex-husband's wife (the stepmother) had AIDS. If she was merely present when the maternal grandmother made the statements is there a violation? We think not since the September, 1988 order merely restricts the parties (Relator and/or her ex-husband) from making derogatory remarks about each other. Mere presence by Relator when someone else made the AIDS statement would not constitute a violation of the September, 1988 order. In addition, the failure of the judgment to identify with certainty the party that made the AIDS statement renders the judgment unclear, vague and ambiguous. *Ex parte Proctor*, 398 S.W.2d 917 (Tex. 1966).

Though evidence was heard by the trial court, the Relator has chosen not to bring forward the Statement of Facts which would enlighten us and perhaps satisfy our curiosity as to whether people really exist that would make or tolerate such statements being made to an innocent child. We are not consoled by the writ of habeas corpus or the Relator's brief filed with this Court, for there is no showing that Relator expresses shock, dismay and revulsion that she and/or her mother have been found guilty of making such vile statements.

With reluctance, and some depression, we grant Relator's writ and order her released from custody under the trial court's commitment order.