NO. 07-03-0165-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 8, 2003

_____

IN RE EARL STEVEN BROWN, RELATOR

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

OPINION

This is an original habeas corpus proceeding. Relator Earl Steven Brown seeks relief from confinement under the judgment of contempt and order of commitment entered by the trial court. We deny relator's petition.

Relator's former wife, real party in interest Amy Deann Brown, filed a Motion for Enforcement by Contempt, alleging that relator had failed to obey the trial court's orders contained in their Final Decree of Divorce dated January 11, 2001, by, among other things, failing to pay child support and maintaining health insurance coverage. At a hearing on April 1, 2003, relator acknowledged that he had not made the payments or maintained the insurance.

At the close of the hearing, the trial court found relator in contempt and imposed confinement both for criminal and civil contempt, sentencing relator to six months in the Potter County Jail, and to remain thereafter in confinement until he purges himself of civil contempt by paying the arrearage plus attorney's fees and costs. The court directed real party in interest's counsel to prepare an order. Relator was taken into custody following the hearing and remains confined in jail.

The court's order, entitled Order Holding Respondent in Contempt and for Commitment to County Jail and containing both the judgment of contempt and the commitment order, was signed April 2, 2003.

Relator's original habeas corpus proceeding in this court is a collateral attack on the contempt order. *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex. 1976). Therefore, relator may be relieved of that order only if the judgment is void. *Id*.; *Ex parte Thetford*, 369 S.W.2d 924, 925 (Tex. 1963)*; Ex parte Scariati*, 988 S.W.2d 270, 272 (Tex.App.–Amarillo 1998, orig. proceeding). When collaterally attacked in a habeas corpus proceeding, a judgment is presumed valid until the relator has discharged his burden showing otherwise. *Ex parte Occhipenti*, 796 S.W.2d 805, 808-09 (Tex.App.–Houston [1st Dist.] 1990, orig. proceeding).

Relator presents four issues, arguing: (1) that the contempt order is void because it was not reduced to writing and signed by the trial court within a reasonable and short time after his confinement; that the criminal contempt portion of the order is void because

2

the trial court did not admonish relator regarding (2) his right to a jury trial and (3) his right against self-incrimination; and (4) that the civil contempt portion of the order is void because relator does not have the present ability to make the payments necessary to purge himself of civil contempt.

Due process does not permit a person to be confined for contempt committed outside the court's presence based only on the court's verbal order; a written judgment of contempt and a written order of commitment are required. *Ex parte Puckitt*, 322 S.W.2d 597 (Tex. 1959). When, as here, the written order of commitment and the judgment of contempt on which it is based are not available for the court's signature at the time of the hearing, the court must sign them without undue delay, within a "short and reasonable time" following the verbal commitment order. *Ex parte Calvillo Amaya*, 748 S.W.2d 224, 225 (Tex. 1988); *see Ex parte Morgan*, 886 S.W.2d 829, 831 (Tex.App.–Amarillo 1994, orig. proceeding).

In *Calvillo Amaya*, the Supreme Court found that a three-day delay from a verbal commitment order at 5:15 p.m. on a Friday until the signing of a written judgment and order the following Monday was not a short and reasonable time. *Calvillo Amaya*, 748 S.W.2d at 225. Later decisions have applied the "short and reasonable time" standard. *See Ex parte Jordan*, 865 S.W.2d 459 (Tex. 1993) (three-day delay too long); *Ex parte Seligman*, 9 S.W.3d 452, 454 (Tex.App.–San Antonio 1999, orig. proceeding) (five-day delay too long); *In re Markowitz,* 25 S.W.3d 1, 4 (Tex.App.–Houston [14th Dist.] 1998, orig. proceeding) (seven-day delay too long); *Ex parte Whitehead*, 908 S.W.2d 68, 70

3

(Tex.App.–Houston [1ˢᵗ Dist.] 1995, orig. proceeding) (thirty-day delay too long); *Ex parte Morgan*, 886 S.W.2d at 832 (four-day delay too long); *Ex parte Alford*, 827 S.W.2d 72, 74 (Tex.App.–Houston [1ˢᵗ Dist.] 1992, orig. proceeding) (forty-day delay too long).

In *In re Butler*, the court held that counsel's request for a period of less than 24 hours to prepare the commitment order involved a short and reasonable time. 45 S.W.3d 268, 271 (Tex.App.–Houston [1st Dist.] 2001, orig. proceeding); *See also Ex parte Hogan*, 916 S.W.2d 82 (Tex.App.–Houston [1ˢᵗ Dist.] 1996, orig. proceeding).

Here, the combined judgment of contempt and order of commitment was signed during the calendar day following the trial court's verbal order for relator's confinement.[1] On the record before us, we hold that such a delay was both short and reasonable. Relator's first issue is overruled.

Relator next contends that the criminal contempt portions of the court's order are void because of the court's failure to admonish him concerning his right to a trial by jury. In criminal contempt proceedings, a contemnor has the right to a jury trial if the contempt is a serious offense, but not if it is a petty offense. *Ex parte Werblud*, 536 S.W.2d 542, 547 (Tex. 1976). Relator does not specify whether he asserts the right to a jury trial under the United States Constitution or the Texas Constitution. He relies, however, on *Ex parte*

---

[1]The record does not reflect the time on April 2 at which the order was signed, only that it was filed with the district clerk at 4:56 p.m. on that date. In their briefs and at oral argument, the parties make reference to the times of day various events during the case occurred. Although we have no reason to believe the times represented to us by counsel are inaccurate, we are bound by the record before us.

*Sproull*, 815 S.W.2d 250 (Tex. 1991), for his assertion that he was faced with a potentially serious punishment, and was thus entitled to a jury trial.

*Sproull*, a *per curiam* opinion that contains the statement "A charge for which confinement may exceed six months is serious," does not specify a constitutional provision as the basis for either its statement or its decision. It simply cites *Ex parte Werblud* and *Ex parte Griffin*, 682 S.W.2d 261 (Tex.1984).[2] Both *Werblud* and *Griffin* are bottomed on rights granted by the Sixth Amendment to the United States Constitution. We, therefore, consider Brown's claims as asserting Sixth Amendment rights.[3] Issues regarding authoritative laws, rules and remedies designed to secure federally-guaranteed rights are federal questions. *Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705, 709 (1967). We are bound by United States Supreme Court case law interpreting the federal constitution. *See State v. Guzman*, 959 S.W.2d 631, 633 (Tex.Crim.App. 1998).

*Werblud* provides an extraction of rules from salient United States Supreme Court cases considering the Sixth Amendment's parameters for jury trial requirements: (1) "petty" contempt matters may be tried without a jury while "serious" contempt cases entail the right

---

[2] On its facts, *Sproull* does not stand for the proposition that any contempt case involving possible confinement longer than six months is serious; the contemnor in *Sproull* was sentenced to 60 days confinement for each of 136 violations, totaling over 22 years confinement. *Sproull*, 815 S.W.2d at 250.

[3] Because relator does not separately brief his Texas constitutional claim, if any is being made, or argue that the Texas Constitution provides more protection to him in this matter than does the United States Constitution, we need not address any possible state constitutional claim separately. *See Brown v. State*, 943 S.W.2d 35, 36 n.3 (Tex.Crim.App. 1997); *Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App. 1992).

to a jury; (2) criminal contempt in and of itself is not a serious offense absent legislative declaration to the contrary; (3) lacking legislative authorization of more serious punishment, a sentence of as much as six months in prison may be imposed without a jury trial; (4) but imprisonment for longer than six months is impermissible unless the contemnor has been given the opportunity for a jury trial, *see Werblud*, 536 S.W.2d at 546-47, then straightforwardly states that "Cases of criminal contempt, where the sentence actually imposed does not exceed six months imprisonment, are exempted from the requirements of a jury trial." *Id*. at 547, citing *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974). The opinion goes on to note, "Texas is in accord with these distinctions between petty and serious offenses." *Werblud,* 536. S.W.2d. at 547.

*Taylor* concerns a factual situation in which the contemnor was found guilty and sentenced on eight counts of contempt. The sentences originally imposed were to run consecutively and totaled over four years confinement. The trial court later amended its judgment, resulting in the sentences running concurrently, so the confinement imposed was for no more than six months. *Taylor*, 418 U.S. at 495-96, 94 S.Ct. at 2701-02, 41 L.Ed. at 906. The United States Supreme Court overruled Taylor's claim that the Sixth Amendment required he be afforded a jury trial. In doing so, the Supreme Court reaffirmed "The thrust of our decisions" on the issue: "[I]n the absence of legislative authorization of serious penalties for contempt, a State may choose to try any contempt without a jury if it determines not to impose a sentence longer than six months." 418 U.S. at 496, 94 S.Ct. at 2702, 41 L.Ed. at 906.

6

The Texas contempt statute at the time *Werblud* was decided provided punishment for contempt of court as a fine of not more than $500 or confinement in the county jail for not more than six months, or both, and was intended to keep contempt punishments within the petty offense category. *See Werblud*, 536 S.W.2d at 547. The current statute continues the proviso that punishment for contempt of court other than a justice or municipal court is a fine of not more than $500 or confinement in the county jail for not more than six months, or both. *See* Tex. Gov't Code Ann. § 21.002(b) (Vernon 1988).

The analysis in *Werblud* relies directly on United States Supreme Court case law which must govern our decision in this matter. *Werblud* states clearly the applicable dividing line between petty and serious contempt: unless the legislature has authorized a serious punishment for contempt (which the Texas legislature has not), the punishment *imposed* determines whether the contempt is petty or serious, not the punishment *possible*. *See Werblud*, 536 S.W.2d at 546-47. *See also Ex parte Casillas*, 25 S.W.3d 296, 299 (Tex.App.--San Antonio 2000, orig. proceeding). [4]

The punishment imposed on relator falls on the petty crime side of the line. He was not entitled to a jury trial, and he was not entitled to be admonished otherwise. Relator's second issue is overruled.

---

[4]To any degree that decisions of other courts of appeals reflect a different view of this issue, we must disagree with our sister courts. *See Ex parte York*, 899 S.W.2d 47, 49 (Tex.App.–Waco 1995, orig. proceeding) (serious offense is one for which the party is at risk of confinement longer than six months, based on the pleadings in the case); *Ex parte Howell*, 843 S.W.2d 241 (Tex.App.–Houston [1st Dist.] 1992, orig. proceeding) (a charge for which confinement may exceed six months is serious); *Cf. Ex parte McNemee*, 605 S.W.2d 353, 356 (Tex.App–El Paso 1980, orig. proceeding).

Relator's third issue, presented summarily in part of one sentence of his petition, asserts that he was deprived of due process of law by the failure of the trial court to admonish him "regarding his right against self-incrimination."[5] The Fifth Amendment privilege against self-incrimination applies in criminal contempt proceedings. *See Werblud*, at 547. Relator could not have been compelled to testify at the hearing on the motion for enforcement in violation of that privilege. But relator was not compelled to testify. Relator was represented by counsel at the contempt hearing. The trial court began the hearing by simply instructing all parties who intended to testify to stand and raise their right hands, at which time they were sworn. Real party in interest Amy Deann Brown was called to testify by her counsel. After she testified, her counsel testified concerning attorney fees and announced that Ms. Brown rested. Thereupon, without any comment by the trial court, relator's counsel called relator as a witness. Among other matters, relator testified that he understood the trial court could hold him in contempt and that if the court did not put him in jail, he was going to have to change his lifestyle and go to work at a job that would allow him to pay his child support.

Whether the Fifth Amendment is implicated when an individual testifies does not depend on whether the witness made a knowing decision to testify, but on *why* he or she chose to testify. *See Lucero v. State*, 91 S.W.3d 814, 818 (Tex.App.--Amarillo 2002, no

---

[5]Relator's assertion here suffers, in part, from the same briefing infirmity as his assertion that his right to a jury trial was violated. He does not specify the constitutional basis on which he relies. Since he does not urge that the Texas Constitution affords him more protection than the federal constitution, only his federal Fifth Amendment rights need be addressed. *See Johnson*, 853 S.W.2d at 533.

8

pet.) (Quinn, J., concurring) (*citing Harrison v. United States*, 392 U.S. 219, 223, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968)). In making such a determination, the totality of the circumstances must be assessed. If the decision constituted an exercise in free will, then the Fifth Amendment right to be free from compelled self-incrimination is not implicated. *See id*.

Relator does not contend that he was either directly or indirectly coerced to testify. He was represented by counsel. He does not assert that he was unaware of his right not to be compelled to testify, or that he would not have testified had he been admonished of that right by the trial court. The totality of the circumstances before us compels the conclusion that relator exercised his free will in deciding to testify. Under such circumstances the trial court did not err in failing to admonish relator of his Fifth Amendment rights. *Id*. Relator's third issue is overruled.

Since we have sustained the criminal contempt portion of the trial court's order, our consideration of relator's fourth issue challenging the civil contempt portion is premature. It may, however, be re-urged in the event he has not purged himself of civil contempt on the completion of his confinement for criminal contempt. *See Ex parte Scariati*, 988 S.W.2d at 273-74.

Accordingly, we deny relator's petition, without prejudice to his later re-urging of his challenge to the civil contempt portion of the trial court's order.

James T. Campbell

9

Justice

Reavis, J., dissenting.

NO. 07-03-0165-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 8, 2003

_____

IN RE EARL STEVEN BROWN, RELATOR

_____

**Dissent**

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

Because I respectfully disagree with the view of my colleagues that presentation of the order to the trial court for signing was not unduly delayed, I would grant the requested relief and order relator released from custody.

By his first issue, relator contends the order is void because it was not reduced to writing and signed within a reasonable and short time after he was confined. Unlike by issues two, three, and four, by his first issue, relator does not allege trial court error, but instead contends that presentation of the order to the trial court for signing was unduly delayed.

By her motion for enforcement by contempt, real party sought enforcement of child support orders and relator's incarceration for not more than 6 months and thereafter confined until the child support was paid in full together with attorney's fees and other relief. On March 4, 2003, the trial court signed its order directing relator to appear and respond to the motion at a hearing to be held on April 1, 2003, at 9:30 a.m. The reporter's record of the hearing held on April 1 shows that at the conclusion of the testimony, the court announced its decision to find relator in contempt and without setting any timetable, requested that counsel for real party prepare an order to be signed. According to the certificate of custody, the Sheriff of Potter County took relator into custody on April 1, 2003. On April 2, 2003, the trial court signed the order of contempt which was filed with the clerk at 4:56 p.m. According to the response of real party, the order was signed approximately 30 hours after relator's confinement.

By his first issue, relator contends the order for his commitment and of contempt is void because the rendition of the order was unduly delayed and is void because it was not reduced to writing and signed within a reasonable and short time after he was confined.

11

Relator argues that the presentation of the order to the trial court for signing was unduly delayed. Section 21.002 of the Texas Government Code authorizes a court to punish for contempt. As applicable here, subsection (f) provides that Chapter 157 of the Texas Family Code shall apply when a person is punished by confinement for contempt of court for disobedience of a court order to make periodic payments for the support of a child. Section 157.166(b) sets out the requirements of an order of criminal contempt. Although these statutes do not specify a time when an order of confinement must be signed, the Supreme Court has addressed the question at least five times commencing with its decision in Ex parte Puckitt, 159 Tex. 438, 322 S.W.2d 597 (1959) (orig. proceeding).

In *Puckitt,* an original proceeding seeking habeas corpus relief, Puckitt was found in contempt for failure to pay temporary support and placed in jail by the sheriff until he purged himself of contempt, but no written order appeared in the record. Holding that a person may not be imprisoned for contempt without a written judgment of contempt and a written order of commitment, Puckitt was discharged. Then, in Ex parte Barnett, 600 S.W.2d 252, 256 (Tex. 1980) (orig. proceeding), the Court held:

> [i]t is well-settled that to satisfy due process requirements, both a written judgment of contempt and a written commitment order are necessary to imprison a person for civil constructive contempt of court.

Although the Court recognized that a trial court can direct that a contemnor be detained by the sheriff for a "short and reasonable time *while the judgment of contempt and order*

*of commitment are prepared*, it ordered that Barnett be released because the commitment order, standing alone without a judgment or order finding relator in contempt, was not sufficient. (Emphasis added). Next, in Ex parte Strickland, 723 S.W.2d 668, 669 (Tex. 1987) (orig. proceeding), citing *Barnett*, the Court again held that due process requires both a written judgment of contempt and a written order of commitment in order to punish for contempt.

Later, in Ex parte Calvillo Amaya, 748 S.W.2d 224, 225 (Tex. 1988) (orig. proceeding), again citing *Barnett*, the Court said*:*

> We hold that a three-day delay is not a "short and reasonable time" *while the documents are being prepared for signature.*

(Emphasis added). Then, by another per curiam opinion, in Ex parte Jordan, 865 S.W.2d 459 (Tex. 1993) (orig. proceeding), where Jordan was confined on Friday, June 11, the court declared the oral commitment order of June 11, as well as the written commitment order of June 14, void, and Jordan was released from confinement. These five cases demonstrate that the Court continues to follow its decision in *Puckitt*, subject only to the qualified exception recognized in *Barnett* and *Amaya* which allows the sheriff to detain a contemnor for a "short and reasonable time *while the judgment of contempt and order of commitment are being prepared.*" (Emphasis added).

13

In the context of confinement for contempt under Chapter 157 of the Family Code, without a written order of commitment and order of contempt, these cases establish that a delay of three days between confinement and rendition of orders will not satisfy "due process" requirements. Real party candidly acknowledges that an interval of three days is not acceptable; however, citing In re Butler, 45 S.W.3d 268, 271 (Tex.App.--Houston [1st Dist.] 2001, orig. proceeding), she contends the 30 hour interval presented here constitutes a "short and reasonable time." *Butler* does not indicate the time when comtemnor was committed; however, it appears the orders were signed at approximately 9:00 a.m. following Butler's commitment, which prompted the court to hold:

> when, as here, counsel has requested less than 24 hours to prepare the commitment order, the period is a short and reasonable time.

Real party suggests that a determination of what constitutes a "short and reasonable time" can only be considered on a case-by-case basis; however, in making this decision, an appellate court may not consider any evidence outside the record. Sabine Offshore Service, Inc. v. City of Port Arthur, 595 S.W.2d 840, 841 (Tex. 1979); *see also* Beasley v. Peters, 870 S.W.2d 191, 194 (Tex.App.–Amarillo 1994, no writ). Also, the determination of this question does not implicate any trial court fact finding or exercise of discretion.

Taking judicial notice that the 320th District Court sits only in Potter County and that the record shows that counsel for real party maintains her law office in Amarillo, it appears that the preparation and submission of the order was not delayed by travel

14

between counsel's office and the trial court.  Also, the record showing  that real party had adequate time for pre-trial preparation,[6] that multiple legal issues or disputed fact scenarios were not presented and that the history and record of payment of child support was neatly and orderly set out in the motion for enforcement by contempt and in a form readily transferable to the order and judgment, in my opinion, the 30 hour delay was not a "short and reasonable time" for the preparation of *the judgment of contempt and order of commitment.*  (Emphasis added).


Don H. Reavis
Justice

_____

[6] *See* 9 WILLIAM V. DORSANEO, III, TEXAS LITIGATION GUIDE, §133.04[5][c][iii] (July 2001), discussing pre-trial preparation.

15